```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON

IN RE CLASSICSTAR MARE LEASE       )
LITIGATION                         )
                                   )         MDL No. 1877
and                                )
                                   )
LARRY MCNEILL,                     )        Master File:
                                   ) Civil Action No. 5:07-cv-353-JMH
      Plaintiff,                   )
                                   )
v.                                 )    Civil Action No. 08-74-JMH
                                   )
GEOSTAR CORPORATION; FIRST         )  MEMORANDUM OPINION AND ORDER
SOURCE WYOMING, INC; and           )
GASTAR EXPLORATION LIMITED,        )
                                   )
      Defendants.                  )
                                   )
```

                 **   **   **   **   **

This action is before the Court on Plaintiff's Motion for Partial Summary Judgment (hereinafter "Motion"). [DE 77]. Plaintiff has filed a Response [DE 84], and Defendant has made a Reply in further support of its Motion [DE 88]. This motion is now ripe for decision and, for the reasons stated below, will be granted in part.

I.  **FACTUAL BACKGROUND**

In early 2001, Plaintiff McNeill invested in a horse breeding investment vehicle (hereinafter "mare lease program") developed by Classicstar, L.L.C., an affiliate of Defendant Geostar. As part of McNeill's investment in the mare lease program, he was given the opportunity to convert all or a portion of that investment into a working interest in natural gas wells with First Source Wyoming

("First Source"), a subsidiary of Geostar. In March of 2002, McNeill exercised this option and converted $1,643,000 of his interest in the mare lease program into a working interest in First Source's natural gas well program. Pursuant to his agreement with First Source, McNeill had the right, starting in 2003, to convert his working interests into 1,493,636 restricted shares of Defendant Gastar Exploration, Ltd. common stock. Additionally, in 2002 and 2003, McNeill invested an additional $900,000 in mare lease programs offered by ClassicStar. McNeill financed each of these acquisitions, in substantial part, with loans from National Equine Lending Company ("NELC"), yet another affiliate of the aforementioned business enterprises.

On December 15, 2004, McNeill and Geostar entered into a Purchase Agreement (hereinafter "Contract") in which Geostar accepted McNeill's offer to sell his right to convert his working interests into Gastar stock, as well as his 2002 and 2003 Classicstar mare lease interests (collectively "the Assets"). Geostar was to pay McNeill according to the following schedule:

> Total payable of Three Million Nine Hundred Sixteen Thousand Seven Hundred Fifteen Dollars and No Cents ($3,916,715.00) at 4% interest with $500,000.00 payable on or before December 15, 2004. It is expressly agreed and understood that this Agreement shall not become effective until Seller receives the first payment of $500,000, and it is a condition precedent to the formation and effect of this Agreement that Seller receives and Buyer pays the first payment of $500,000 and the balance payable monthly in the amount of $34,592.58 with the entire remaining balance of One Million Eight Hundred Eighty Four Thousand Six Hundred Five Dollars and

>   Seventy Seven Cents ($1,884,605.77) which includes interest to be paid in full on or before January 15, 2010.  Working interest payments owed to Seller will continue until paid in full.
>
>   In addition, all 2001, 2002, and 2003 National Equine Lending Company, L.C. ("NELC") loans shall be considered paid in full as of January 1, 2005. . .

[Contract, p. 2]. The Contract goes on to provide that "[McNeill] shall further deliver an Assignment (provided by [Geostar]) duly executed for all of McNeills's right, title and interest in and to the Powder River Basin Assets and the ClassicStar Mare Lease Assets." *Id.* at 2-3.

Geostar paid McNeill the initial $500,000 and made fourteen monthly payments of $34,592.58 before the payments ceased in February 2006. Pursuant to the Contract's default provision, McNeill gave Geostar written notice of default based on its failure to continue making payments. Having received no response to the initial notice, McNeill waited forty-five days (the time to cure allotted under the Contract) and gave a second written notice, which also failed to yield a response from Geostar. Accordingly, McNeill asks for damages due to Geostar's alleged breach of contract.

Geostar has filed a counterclaim against McNeill, upon which McNeill also moves for summary judgment. In its counterclaim, Geostar avers that McNeill acquired the working interests from First Source by paying with mare lease interests that he did not rightfully own. Further, Geostar avers, McNeill obtained his stake

3

in the working interests through "materially false omissions or representations of fact" and that, on various occasions, McNeill purported to have made larger investments in ClassicStar's mare lease program than he actually did. Geostar asserts that, as a result of McNeill's purported misrepresentation, McNeill was not the lawful owner of the Assets that comprised his consideration for the Contract. Geostar also avers that it made payments to McNeill of no less than $995,797, exceeding McNeill's "actual investment" by at least $320,959.[1] Although Geostar, in its counterclaim, makes vague references to "material omissions" and "false representations," it does not identify, in its Response to Plaintiff's Motion, the facts to which it refers. Based on all of the documents before it, the Court concludes that Geostar's counterclaim refers to the fact that large portions of McNeill's investments were financed by loans from NELC, and that he paid relatively little of the investment costs out of pocket. Relying on theories of unjust enrichment and conversion, Geostar contends that it is entitled to at least $320,959 in damages – the difference between the total of the payments Geostar made to McNeill and the amount of McNeill's investments, not including the portions borrowed from NELC.

---

[1] McNeill does not dispute that Geostar paid $995,797 of its obligation under the Contract.

4

**II.  APPLICABLE STANDARD OF REVIEW**

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once that burden is met, the nonmoving party must "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 249; *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard,* 374 F.3d 377, 380

(6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson,* 477 U.S. at 255; *Summers,* 368 F.3d at 885.

### III. DISCUSSION

**A. There is no genuine issue that Geostar breached its Contract with McNeill.**

Under Utah law, the following elements constitute breach of contract: "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages." *Bair v. Axiom Design, L.L.C.,* 20 P.3d 388, 392 (Utah 2001). Neither McNeill nor Geostar disputes that their agreement of December 15, 2004 was a fully integrated contract with unambiguous terms. Further, Geostar does not deny that it deviated from the agreed payment schedule when it ceased making payments to McNeill in early 2006. According to McNeill, these facts amount to a clear breach of contract on the part of Geostar. Geostar now argues, in response to McNeill's Motion – and apparently for the first time since this dispute arose – that McNeill actually breached the Contract first, by failing to execute proper documents to assign the Assets to Geostar. McNeill's alleged breach, Geostar claims, relieved it of its obligation to continue making payments pursuant to the payment schedule. The record reveals, however, that Geostar indeed breached first, when it ceased making payments

6

as required by the terms of the Contract. As a result, McNeill is entitled to judgment as a matter of law on his breach of contract claim.

Geostar's claim that McNeill made the initial breach is without merit. The Contract provides, in pertinent part, "Seller shall further deliver an Assignment (provided by [Geostar]) duly executed for all of Seller's right, title and interest in and to the Powder River Basin Assets and the ClassicStar Mare Lease Assets." Because McNeill failed to deliver an assignment, Geostar claims, it was relieved of its obligation to continue making payments pursuant to the payment schedule. Geostar claims the Contract required that it make payments to McNeill *after* the execution of an assignment of the assets. The plain language of the Contract, however, sets no fixed time at which McNeill was to formally assign the Assets. Further, Geostar fails to acknowledge that the Contract language required it to provide the assignment documents to McNeill. Accordingly, Geostar makes no claim that it ever provided any such documents or that it ever asked McNeill execute an assignment. Further, if Geostar believed McNeill to be in default, the terms of the Contract required that it provide him written notice of the default. Not only did Geostar not provide written notice of McNeill's failure to assign the Assets, it did not respond to either of McNeill's written notices when it ceased making payments in 2006. Certainly Geostar's failure to make

payments pursuant to the parties' agreement constituted a material breach, and thus, McNeill is entitled to rescind the contract or to collect damages. *See Polyglycoat Corp. v. Holcomb,* 591 P.2d 449, 451 (Utah 1979)("As a general proposition, a party to a contract has a right of rescission and an action for restitution as an alternative to an action for damages where there has been a Material breach of the contract by the other party.").

**B. DAMAGES**

Plaintiff asks the Court to award him damages of: $3,476,314.45 (the unpaid cash installments due pursuant to the payment schedule); 74.6 percent of the Gastar stock that was to be transferred pursuant to the Contract; $262,880.14 for working interest payments due under the Contract; and prejudgment interest at the Contract rate of four percent. For the following reasons, Plaintiff's prayer for damages will be granted in part.

According to McNeill's affidavit, Geostar is delinquent with respect to all remaining monthly installment payments in the amount of $1,591,258.68 and as to the final payment of $1,884,605.77, which totals $3,475,864.45.[2] Additionally, the Contract provides

---

[2] In Plaintiff's Memorandum, the figure that represents this amount varies. While the unpaid installment total and final contract payment amount are represented consistently with the figures above, the total amount owed is stated as both $3,476,314.45 and $3,440,692.00. Because Plaintiff does not attempt to explain any significance of the variation in these figures, the Court takes notice, on its own, that $1,591,258.68 added to $1,884,605.77 equals $3,475,864.45.

that "[w]orking interest payments owed to [McNeill] will continue until paid in full."[3] McNeill claims damages for unpaid working interest payments in the amount of $262,880.14. [See McNeill Affidavit, Plaintiff's Exhibits D, E]. Geostar does not dispute these figures.

McNeill also asks that Geostar be required to deliver to him 1,114,252 common shares of Gastar stock, as provided under Paragraph C.10 of the Contract. The Contract provides:

> In the event of an uncured default, as set forth in paragraph 9 above, buyer shall provide to seller all shares for which seller has not been paid. This calculations shall be made on a pro rata basis and the certificates evidencing the shares shall be returned to seller within thirty (30) days from the date of the default.
>
> For example, if buyer has paid a total of $1,000,000 of the $3,916,715.00, seller shall be entitled to receive seventy four point five percent (74.5%) of all Gastar shares owed to seller.

McNeill does not dispute that Geostar has paid $995,797 of the $3,916,715 due under the Contract. This means that Geostar has "paid for" twenty-five point four percent (25.4%) of the Gastar stock. Accordingly, McNeill is asking for seventy-four point six percent (74.6%) of the 1,493,636 Gastar shares[4] – 1,114,252 shares.

As the breaching party, Geostar is liable to McNeill for the

---

[3] McNeill also asks for prejudgment interest at the contract rate of four percent.

[4] Geostar does not dispute that the applicable number of Gastar shares is 1,493,636.

9

amount necessary to place him in as good a position as if the contract had been performed. *See Christiansen v. Holiday Rent-A-Car,* 845 P.2d 1316, 1320 (Utah App. 1992). On the record, there is no dispute that Geostar failed to pay installment payments after February 2006 and the final payment, which was to be paid on or before January 15, 2010. Had Geostar performed according to the payment schedule, McNeill would have received $3,475,864.45 more than he actually did. What at first blush seems to be a simple calculation of contract damages is, however, complicated by McNeill's demand, pursuant to Paragraph C.10 of the Contract, that he be entitled to 74.6 percent of the Gastar stock at issue.

In his Memorandum, McNeill asserts that the return of stock pursuant to Paragraph C.10 is not his exclusive remedy, and Geostar does not dispute that. While parties dealing at arm's length generally can contract on their own terms without the court's interference, the Court will not allow McNeill to recover twice for the same loss. *See Biesinger v. Behunin,* 584 P.2d 801, 803 (Utah 1978). Said differently, McNeill cannot recover full expectation damages under the contract *and* retain the bulk of the subject matter of the contract. While forfeiture provisions are often upheld, they will not be enforced when the amount forfeited is "so great as to be unconscionable or in the nature of a penalty." *Themy v. Seagull Enter., Inc.,* 595 P.2d 526, 529 (Utah 1979). In his prayer for damages, McNeill essentially asks that Paragraph

C.10 be enforced as a forfeiture or liquidated damages clause. In the Court's mind, the enforcement of this clause, combined with an award of full expectation damages, would constitute an unconscionable remedy and will not be permitted.

While the Court will not permit McNeill double recovery for his losses on the Contract, it recognizes that contracts should be enforced according to the parties' intent. *Wilson v. Johnson,* 234 P.3d 1156, 1163-64 (Utah 2010) (citing *Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852, 857 (Utah 1998)). Paragraph C.10 clearly reflects the parties' intent that, in the event of an uncured default, Geostar would provide to McNeill all shares for which Geostar had not paid. There is no evidence that the parties dealt with one another at anything other than arm's length. As a result, McNeill, as the nonbreaching party, will have the right to enforce Paragraph C.10 if he wishes. If he chooses to do so, however, his award of money damages must be reduced by the value of the Gastar stock. In McNeill's Complaint, he asks for damages, in an amount equal to the number of Gastar shares that should have been delivered to him, multiplied by the highest trading price achieved by those shares since Geostar's default. [DE 1-5, p. 16]. In his Motion, however, he asks for delivery of the actual shares. Under Utah law, the date that the defendant breaches a contractual obligation to deliver stock is the date by which damages are measured. *Coombs & Co. of Ogden v. Reed,* 303 P.2d 1097, 1099 (Utah

11

1956). Under this rule, the most McNeill could recover is the value of the shares on the date of Geostar's breach.

In actions such as this, where the damage is complete and the amount of loss is fixed, the prevailing party is generally permitted to collect prejudgment interest. *Bjork v. April Indus. Inc.*, 560 P.2d 315, 317 (Utah 1977). The award of prejudgment interest and the amount thereof "may be allowed at the rate and from the date determined by the court to be equitable." *Peterson v. Jackson*, 253 P.3d 1096, 1102 (Utah App. 2011)(quoting Utah Code Ann. § 16-10a-1435(5)(c)). Because the parties agreed upon a contract interest rate of four percent, and Geostar does not take issue with this rate in its Response, the Court deems four percent to be an equitable rate for prejudgment interest.

## C. GEOSTAR'S COUNTERCLAIMS

McNeill moves for summary judgment on all of Geostar's counterclaims. Geostar asserts three causes of action against McNeill – "Unjust enrichment," "Money Had and Received," and "Conversion." Each of the claims is based on Geostar's theory of "overpayment." The gist of the overpayment theory is that McNeill's "actual investment" in the Assets consisted of the cash he paid out of pocket. In other words, the amounts borrowed from NELC did not amount to actual investments. Geostar asserts that McNeill led Geostar to believe that he had invested more cash out-of-pocket in the Assets than he actually had. By making payments

that totaled nearly one million dollars, Geostar avers, it "overpaid" McNeill by at least $320,959.

McNeill has met his initial burden by demonstrating to the Court the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. Paragraph 1 of the Contract states that McNeill "invested" $1,643,000 to purchase the working interests. It goes on to state that McNeill "invested" $900,000 in the Classicstar 2002 and 2003 mare lease programs. There is no suggestion, based on the plain language of the contract, that McNeill had paid those amounts in cash. Further, McNeill obtained financing for the purchases from NELC, an affiliate of Geostar. Making Geostar's claims even more puzzling is the fact that, according to the plain language of the Contract, Geostar was to have the NELC loans forgiven, as part of the parties' bargain. An appendix listing each of the loans is attached to the Contract.

As the party bearing the ultimate burden of proof with respect to these claims, Geostar is obligated to go beyond the pleadings and present some evidence that raises a genuine issue for trial. Instead, Geostar failed entirely to respond to McNeill's motion for summary judgment with respect to its counterclaims. Accordingly, the Court finds no genuine issue that would warrant these claims proceeding to trial.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff Larry McNeill's Motion

13

for Partial Summary Judgment [De 77] is **GRANTED** in part and **DENIED** in part, as set forth above.

This the 11th day of April, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge