UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION | ) )  ) MDL No. 1877 |
| and | ) ) |
| DUMAR HORSES, L.C., | ) Master File: ) Civil Action No. 5:07-cv-353-JMH |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 08-17-JMH ) |
| CLASSICSTAR, LLC, et al., | ) **MEMORANDUM OPINION AND ORDER** ) |
| Defendants. | ) ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon three motions: Plaintiff's Motion for Summary Judgment [DE 80; *see also* DE 81, 82, 83, and 84] and Defendants GeoStar Corporation and Geostar Equine Energy, Inc.'s ("GeoStar" and "GEEI") Motion to Strike the Declaration of Duane Shaw in Support of Plaintiff's Motion for Summary Judgment [DE 89] and Motion to Withdraw Deemed Admissions [DE 90]. Responses [DE 88, 93, 94] and Replies [DE 91, 92, 96, and 97] have been filed. These motions have been considered by the Court and are resolved as follows.

**I.   Motion to Withdraw Deemed Admissions**

Defendants GeoStar and GEEI seek to withdraw deemed admissions

because Dumar, when propounding discovery requests to Defendants, served those requests by hand-delivery to Defendants' attorneys at Snell & Wilmer, listed as counsel of record for Defendants, but failed to serve the discovery requests electronically as part of a master list of discovery requests as directed by the Court's previous orders [DE 25, 334, and 689]. Defendants ultimately proffered responses to the requests for admissions, albeit five days after learning that they had been served and eleven days after they were due. Plaintiff explains (1) that it never assented to those late responses and, in fact, only told Defendants that it might accept them depending on what Defendants' responses were and (2) that it never, ultimately, agreed to late-made responses.

Under Rule 36(a)(3), it is clear that the requests were deemed admitted since Defendants failed to respond to the requests for admission within thirty days of service. Defendants concede that they did not respond within the required time and that, thus, Plaintiff has grounds upon which to claim the admissions. This Court, however, has discretion to permit withdrawal or amendment of admissions, and the withdrawal of alleged admissions is allowed (1) "when the presentation of the merits of the action will be subserved thereby" and (2) when the party who obtained the admission fails to demonstrate to the court that the withdrawal or amendment will prejudice that party "in maintaining the action or

defense on the merits." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (quoting *Amer. Auto Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991)).

Here, upholding the alleged admissions would be tantamount to eliminating any and all defenses to Dumar's claims. Thus, the first prong of the test is met. *See Riley v. Kurtz*, Case No. 98-1077, 1999 WL 801560 (6th Cir. 1999) (quoting *Hadley v. United States*, 45 F.3d 134, 1348 (9th Cir. 1995); *Dynasty Apparel Indus. Inc. v. Rentz*, 206 F.R.D. 596, 602 (S.D. Ohio 2001). Further, there is no real issue concerning prejudice to Plaintiff since Defendants almost immediately (and before the filing of the Motion for Summary Judgment) made their (according to Plaintiff, late) responses. *See Chancellor v. City of Detroit*, 454 F. Supp.2d 645 (E.D. Mich. 2006) (citing *Gutting v. Falstaff Brewing Co.*, 710 F.2d 1309, 1313 (8th Cir. 1983)). The Court has considered Plaintiff's rationale for their belated response and concludes that their explanation is reasonable.

Perhaps Defendants could have been more timely in their response. Perhaps Plaintiff could have served everything as indicated by the Court's order. Regardless, Plaintiff was not prejudiced by Defendants' failure to respond on the due date except insofar as they did not ultimately obtain the admissions they

desired. That is not enough to warrant relief. Plaintiff demonstrated a willingness to waive their objection to the manner of service so long as the response to the request for admissions was accepted. Clearly, some sort of administrative oversight occurred and, somehow, the requests for admissions did not make their way into the queue of work to be done within the thirty day period, whoever was to undertake those efforts on behalf of Defendants. That is forgiveable. Plaintiff's objection is not because it or Plaintiff's counsel would be somehow prejudiced or, for that matter, inconvenienced by the seven extra days it took for Plaintiff to respond because of the communication issue. The reality is that Plaintiff decided it would not forgive the lateness because it did not like Defendants' responses when they declined to admit what Plaintiff had requested – which is too coy by far. Accordingly, the Court will permit the withdrawal of the deemed admissions and, further, will deem the responses made by Defendants timely.

The court, then considers, what this means for Plaintiff's Motion for Summary Judgment, and the answer is clear: it is fatal to the Motion as explained below.

## II. Motion for Summary Judgment

### A. Applicable Standards of Review: the Burdens of Proof and Persuasion for a Motion for Summary Judgment

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once that burden is met, the nonmoving party must "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008). There is a genuine dispute as to a material fact if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 249; *Summers v. Leis,* 368 F.3d 881, 885 (6th

Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard,* 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson,* 477 U.S. at 255; *Summers,* 368 F.3d at 885.

**B. Discussion**

At its heart, this individual matter is a contract action with a twist, because Dumar asserts that GeoStar is the alter ego of GEEI and ClassicStar, and that it is , thus, liable for the others' debts to Dumar. There are also several contracts, including guaranties by GeoStar, at bar. Dumar contends that it entered into a Purchase Agreement with ClassicStar, L.C., in 2004, under which Dumar would sell to ClassicStar its interest in certain equine breeding and ownership rights in exchange for an installment note, which was executed by ClassicStar, and payments in accordance with that note's provisions. Plaintiff contends that ClassicStar did not meet its obligations and is in default on that note. Plaintiff also avers and intends to demonstrate that GeoStar executed and failed to honor a Guaranty Agreement – agreeing to pay the note in the event that ClassicStar would not or could not pay – which it

made in order to induce Dumar to enter into the Purchase Agreement and accept the note as payment.

Dumar also agreed to purchase units offered by First Equine Energy Partners, L.L.C. ("FEEP"), as part of offerings conducted in 2003 and 2004, which provided Dumar with a put option under which FEEP agreed to repurchase those units if the option was exercised. Dumar contends that it exercised those put options in a timely fashion but that FEEP failed to pay for the repurchase of the units. That same transaction was the subject of a guaranty by Geostar, the parent corporation of FEEP's manager, GeoStar Equine Energy, Inc. ("GEEI"), which GeoStar has – according to Dumar – failed to honor. Finally, Dumar contends that it entered into a 2004 Mare Lease and Breeding Agreement with ClassicStar, pursuant to which Dumar was to receive eight horses for breeding purposes, and which ClassicStar breached by providing only eight horses.

In support of these claims, Dumar relies on the admissions, now withdrawn, of the defendants, and the Declaration of Duane Shaw, its principal. Defendants ask the Court to strike the declaration on the grounds that the contracts in question are not attached and that reliance on such a declaration is prohibited by the terms of Rule 56(e). This is not always the case. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, Civil 3d § 2722, at 381 ("testimony

otherwise admissible need not be stricken simply because it contains evidence that also appears in written documents that are not attached to the affidavit . . ..""). For example, where Dumar contends through Shaw that Defendants have control over original, fully executed documents and that, as a result, Shaw cannot provide copies of fully-executed originals, the matter may fall into one of the evidentiary exceptions set forth in Fed. R. Evid. 1004. The reality is, however, that when the declaration of Duane Shaw is considered, it does not – without more – provide evidence that Defendants assented to the contracts in question. Accordingly, the Court need not resolve the issue of the treatment of Declarant's statement since Declarant offers no proof of Defendants' assent to the various contracts at bar.

He has made an assertion of legal conclusions – that Defendants entered into the relevant contracts – rather than declaring facts within his personal knowledge from which the Court could conclude that enforceable contracts existed (for example, proof that Plaintiff's consideration was accepted through evidence of cancelled checks or proof of wire transfers; other correspondence or agreements which reference or rely on the contracts which are the subject of their claims; statements made by Defendants from which assent can be implied.). *See, e.g., MAPCO Alaska Petroleum, Inc. V. Central Nat. Ins. Co. of Omaha*, 795

F.Supp. 941, 948-49 (D. Alaska 1991) (holding that Plaintiff presented sufficient evidence to establish existence of insurance policy where it was unable to locate original after good faith search but was able to produce a certificate of insurance referencing the policy and a cover letter from an insurance broker indicating that the policy was in effect, as well as invoices indicating payment of premiums and other policies which referred to it, as well as no evidence of cancellation or withdrawal of the policy). Of course, Defendants are careful not to say that such evidence does not exist, but in the absence of that evidence, the failure to challenge it does not persuade the Court that there is no genuine dispute, only that is a lacuna – a hole – in the evidence that must be filled, if it can be filled, at a later time.

For now, there is a lack of evidence as to the enforceability of the contracts at bar, even if the Court considers Shaw's declaration.[1] In the future, Plaintiff may be able to use

---

[1] Notably Plaintiff has established through Shaw's affidavit that the original is not in its possession and that it is Plaintiff's belief that the original is in Defendants' possession. As well, Plaintiff's declarant believes that Defendants assented to the agreement, but based on what evidence? Certainly, Plaintiff's declarant has set forth his belief in the legal conclusion that Defendants assented to the agreement. The Court has no reason to doubt the sincerity of that belief but, in the absence of something more to draw the conclusion that Defendants assented to the contract (for example that Declarant saw the signed contracts, has personal knowledge from which it can be deduced that Defendants accepted the consideration, or some other evidence from which the Court can conclude that Defendants' assent was given).

testimony of an individual with adequate knowledge – perhaps even Shaw – to prove the existence of a contract which is in the possession of one or more of these Defendants under Fed. R. Evid. 1004. Since Defendants have not denied the existence of the contract through evidence presented in response to the Motion for Summary Judgment and has responded only that the contracts in question must be in the mountain of discovery turned over to Plaintiff if they are anywhere, the Court would be surprised if Fed. R. Evid. 1004 did not come into play. That will, of course, be a question for and the subject of findings at the trial in this matter, and this Court will leave those findings to the transferor court. Ultimately, the dispute before this Court gets to the very heart of the threshold issue in this case – whether the parties agreed to anything. That is, in light of Plaintiff's apparent inability to produce the contracts in question, one for a fact finder at trial.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED:**

   (1) That Defendants GeoStar Corporation and Geostar Equine Energy, Inc.'s ("GeoStar" and "GEEI") Motion to Withdraw Deemed Admissions [DE 90] is **GRANTED**;

   (2) That Plaintiff's Motion for Summary Judgment [DE 80] is **DENIED**; and

(3) That Defendants GeoStar Corporation and Geostar Equine Energy, Inc.'s ("GeoStar" and "GEEI") Motion to Strike the Declaration of Duane Shaw in Support of Plaintiff's Motion for Summary Judgment [DE 89] is **DENIED AS MOOT**.

This the 11th day of April, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge