```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

|                                    |   |                                    |
|------------------------------------|---|------------------------------------|
|                                    | ) |                                    |
|                                    | ) | MDL No. 1877                       |
|                                    | ) |                                    |
| IN RE CLASSICSTAR MARE LEASE       | ) | Master File:                       |
| LITIGATION                         | ) | Civil Action No. 5:07-cv-353-JMH   |
|                                    | ) |                                    |
| NEIL AND ANNE BAKER, et al.,       | ) |                                    |
|                                    | ) |                                    |
|     Plaintiffs,                    | ) | Civil Action No. 5:08-321-JMH      |
|                                    | ) |                                    |
| v.                                 | ) |                                    |
|                                    | ) |                                    |
| DAVID PLUMMER, et al.,             | ) |                                    |
|                                    | ) |                                    |
|     Defendants,                    | ) |                                    |

**MEMORANDUM OPINION & ORDER**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendant John Parrott [DE 33]. Plaintiffs have filed a Response [DE 176], and Defendant has filed a Reply [DE 181] in further support of his motion.[1]

**I.**

Plaintiffs aver that the various defendants, acting together, defrauded them and other unsuspecting individuals and businesses out of more than five hundred million dollars ($500,000,000.00). Plaintiffs aver that Defendant Parrott, among others, played a role in devising, perpetrating, carrying out, marketing and/or covering

---

[1] The Motion is moot as to all other moving Defendants, who have been terminated as participants in this action for a variety of reasons during the pendency of the case.

up the fraudulent Mare Lease Program scheme to individual and business investors, including Plaintiffs.

Plaintiffs aver that defendant David Plummer owned Classic Breeders, LLC. *See* Complaint, at ¶¶61-64. Classic Breeders, LLC was later acquired by GeoStar, the name was changed to ClassicStar, LLC ("ClassicStar"). *See* Complaint, at ¶ 65. Robinson, Parrott and Ferguson owned the primary interests in GeoStar and controlled it. *See* Complaint, at ¶ 40. ClassicStar's affairs were conducted through its parent and/or subsidiary companies, such as ClassicStar Farms, LLC, and ClassicStar Farms, Inc. *See, e.g.,* Complaint, at ¶ 67. The Mare Lease Programs were represented as a method of participating in the thoroughbred horse industry, wherein a participant would (1) lease the rights to a mare for a breeding season, (2) select a stallion nomination to sire a foal with the leased mare and (3) retain or sell the resulting – and presumably extremely valuable – thoroughbred foal. *See* Complaint at ¶ 54. The purported arrangement usually included the price of board and insurance for the mare and/or resultant foal. *Id.* This lease arrangement was touted as having beneficial tax consequences for the participant, which were represented by the defendants to be compliant with the Internal Revenue Code. *See, e.g.,* Complaint, at ¶¶ 71, 85, 92, 113, 131.

After GeoStar's acquisition of Classic Breeders, LLC, ClassicStar began selling many more Mare Lease Programs than the

2

thoroughbred interests owned by ClassicStar could support. *See, e.g.,* Complaint, at ¶ 5, 68, 99. Defendants, including Parrott, intentionally oversold the Mare Lease Programs knowing that ClassicStar, ClassicStar Farms, LLC or ClassicStar Farms, Inc. did not own enough thoroughbred mare interests sufficient to support the number of Mare Lease Programs sold. *See* Complaint, at ¶ 6. The defendants, including the Parrott, worked together to aggressively market the Mare Lease Programs to individuals and business with significant incomes and assets, despite the fact that they knew that ClassicStar, ClassicStar Farms, LLC or ClassicStar Farms, Inc. did not own enough thoroughbred mare interests sufficient to support the number of Mare Lease Programs sold. *See, e.g.,* Complaint, at ¶¶ 2, 68, 99.

These parties frequently sent correspondence, made or received telephone calls, and certainly received funds from investors using the mail and wires, all in order to make this plan work. In order to conceal the fact that the Programs were unsustainable, participants were urged by defendants to exchange their Mare Lease Program interests for other supposedly valuable business opportunities with entities related to and/or controlled by defendants and obscuring the fact that the exact same mares were being marketed and leased to multiple investors at the same time. *See, e.g.,* Complaint, at ¶ 5, 111.

For his part, Parrott owned a "primary interest" in GeoStar, was an officer and/or director of GEEI, took "active roles in the management of ClassicStar's sale and promotion of the Mare Lease Programs," including the review of marketing materials and the negotiation of commission contracts with salespeople. Compl., ¶¶ 40, 42, 76-77. GeoStar received proceeds from the sales of ClassicStar Mare Lease Programs which were used to fund its operations and, by extension, so did Parrott.

## II.

In evaluating a Rule 12(b)(6) motion, the factual allegations of the Complaint "must be enough" that the right to relief is "above the speculative level" and is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint pleads facts "merely consistent with" liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III.

In his motion to dismiss, John Parrott argues that (1) Plaintiffs' RICO claims fail as they fail to specify which subsection of RICO govern their claim and would, in any event, (2) fail because Plaintiffs' have failed to properly plead a RICO

enterprise. He argues, as well, (3) that the RICO claims would also fail because they fail to plead the underlying predicate acts with the particularity required by Fed. R. Civ. P. 9(b) and that (4) the 1962(a) claim fails because Plaintiffs have not pleaded an injury directly related to the investment or use of illegally obtained income. Parrott next argues that (5) Plaintiffs' Colorado Organized Crime Control Act ("COCCA") claims fail for the same reason as their RICO claims; (6) Plaintiffs' fraud claims fail for failure to state their claims against him with the particularity required by Fed. R. Civ. P. 9(b); (7) Plaintiffs' negligent misrepresentation claims fail as they have not alleged misrepresentations made by him; (8) Plaintiffs' civil theft claim fails because their fraud claims against him fail; (9) Plaintiffs' accounting claim fails because they have not properly alleged that Parrott entered into a contract with, owed a fiduciary duty to, or received property from Plaintiffs; and (10) Plaintiffs' fraudulent transfer claims against him should be denied.

**A.   RICO**

As an initial matter, the Complaint does not fail for failure to specify which subsection of 18 U.S.C. § 1962 was allegedly violated. Here, Plaintiffs aver that defendant violated the statute by using money derived from alleged racketeering activity, which is a violation of 1962(a), acquired or maintained an interest or control of an alleged enterprise, which is a violation of

5

1962(b), and conducted the affairs of an enterprise with which he was associated by soliciting investments through mail fraud, which is a violation of 1962(c), as well as participation in a conspiracy to violate RICO, a violation of 18 U.S.C. § 1962(d). The Complaint alleges that: (1) the RICO defendants constituted an Enterprise affecting interstate commerce; (2) each of the RICO defendants was associated with or employed by the enterprise and each conspired to and did as part of that employment or association conduct or participate in the conduct of the Enterprise affairs through engaging in a pattern of racketeering activity in order to misappropriate Plaintiffs' significant investments as income derived from the Enterprise; (3) each of the RICO defendants conspired to and did derive income from a pattern of racketeering activity (including mail fraud), some of which was used to operate the Enterprise, enabling the Enterprise to defraud Plaintiffs; and (4) that the RICO defendants' actions violated 18 U.S.C. § 1962. See Complaint, ¶¶ 425-435.

These allegations, the details of which are accepted as true for these purposes, clearly establish that: (1) the RICO defendants used money derived from alleged racketeering activity, stating a claim under 18 U.S.C. § 1962(a); (2) the RICO defendants conducted the affairs of the Enterprise by soliciting investments through committing, *inter alia*, mail fraud, stating a claim under 18 U.S.C. § 1962(c); and (3) there was an agreement among the RICO defendants

to commit the aforementioned violations of 18 U.S.C. § 1962, stating a claim under 18 U.S.C. § 1962(d). *See H.G. Gallimore, Inc. v. Abdula*, 652 F.Supp. 437, 450 (E.D.Ill. 1987). Maybe just as telling, Parrott recognizes that the Complaint pleads 18 U.S.C. § 1962(a), (c) and (d) claims). *See* Memo, at 5. The Court concludes that Plaintiffs properly state RICO claims under 18 U.S.C. § 1962 in their complaint, and the motion to dismiss must be denied in this regard.

Further, the Court concludes that Plaintiffs have pleaded an "enterprise" distinct from the "persons" cognizable under the statute. An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). For RICO purposes, the term "enterprise" encompasses not only legal entities, but also illegitimate associations-in-fact, and "[a]n enterprise must be merely an ongoing organization, formal or informal." *Russello v. United States*, 464 U.S. 16, 24 (1983); *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1297 (6th Cir. 1989). By contrast, a "person" includes any individual or entity capable of holding a legal or beneficial interest in property. 18 U.S.C. § 1961(3). The "person" and the "enterprise" must be separate and different entities, since only "persons" can be held liable for RICO violations, while the

7

"enterprise" itself is not liable. *Fleischhauer*, 879 F.2d at 1296. The corporate fiction has a role to play here for even where a person owns 100% of a corporation's shares that ownership does not change the fact that the corporation and the owner are separate legal entities. *Id.*, 879 F.2d at 1297.

Citing *In re Tucker Freight Lines Inc.*, 789 F. Supp. 884 (W.D. 1991), *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989) and *Yellow Bus Lines v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132 (D.C. Cir. 1989), Parrott correctly states that: (1) an "enterprise" may consist only of legal entities or associations of individuals only, and not corporations[5]; and (2) that "an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself." *See* Memo, at 5-7. The Court disagrees, however, with his assertion that there can be no RICO claim in this case because the alleged enterprise consists merely of a corporate entity (*i.e.*, Classicstar) associated with its own employees or agents carrying on the regular affairs of the corporation. *Id.*, at 7.

The "enterprise" alleged is not ClassicStar, but rather the "Mare Lease Marketing Enterprise," which was comprised of the following "persons": David Plummer, Spencer Plummer, Tony Ferguson, John Parrot, Thom Robinson, ClassicStar, LLC, ClassicStar Farms, LLC, ClassicStar Thoroughbreds of Kentucky, ClassicStar 2004,

8

ClassicStar 2004 Powerfoal Stable, ClassicStar 2005 PowerFoal Stables, ClassicStar 2003 Racing Partnership, GeoStar Corp., FEEP, GeoStar Equine Energy, Inc., GeoStar Financial Services, NELC, New NEL, Terry Green and Strategic Opportunity Solutions, LLC. *See* Complaint, 60, 425-435. Thus, Parrott, the other moving defendants whose requests for relief are now moot, and individuals and entities entirely unrelated to ClassicStar, such as Terry Green, are the persons forming the Mare Lease Marketing Enterprise. While, under the "distinctness" requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members, and cannot join with its own members to undertake "regular corporate activity" and thereby become an enterprise distinct from itself, *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 377 (6th Cir. 1993), the situation is different when the enterprise consists of individuals and entities other than a corporation's own subdivisions, agents or members and undertakes activities other than "regular corporate activity,".

The facts of this case can be distinguished from *Puckett* and *Yellow Bus Lines* because the Complaint does not allege an enterprise consisting *solely* of one corporation (or one union) acting by and through its employees. The distinctiveness requirement is met because the Mare Lease Marketing Enterprise consisted of several entities and individuals, including those

9

outside the chain of corporate ownership of ClassicStar, GeoStar and other ostensibly related entity defendants. Moreover, the activities of the Mare Lease Marketing Enterprise were not the "regular corporate activities" of ClassicStar, which were purportedly breeding, raising and boarding thoroughbred horses, and the like. *See*, *e.g.*, Complaint ¶¶ 72, 82-84. Thus, the Complaint adequately pleads the element of "enterprise."

That the conspirators include related corporations, such as GeoStar and ClassicStar, and their officers, directors, managers and/or employees, such as Ferguson, Robinson and Parrott, does not, without more, mean that there is no distinction between the "persons" and the "enterprise." For example, taking the averments of the Complaint as true, GeoStar and ClassicStar are separate and distinct legal entities, and thus separate and distinct "persons" for RICO purposes. Similarly, Ferguson, Robinson and Parrott are both corporate owners/employees and natural persons, and they are distinct from the corporation itself, a legally separate entity with different rights on the facts before this Court. RICO requires no more "separateness" than that. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). An employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise." *Id.*

With respect to the requisite predicate acts, which must be

pleaded with particularity in accordance with Fed. R. Civ. P. 9(b), the Court is satisfied. Plaintiff has pleaded that each of the defendants participated in a scheme to defraud knowing or having reason to anticipate that use of the mail or wires would occur and that each such use would further the fraudulent scheme. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *see also Breslin Realty Development Corp. v. Shackner*, 397 F.Supp.2d 390, 402 (E.D.N.Y. 2005)(in RICO cases, it is not necessary to allege that each of multiple defendants personally used the methods of communication, just that each caused such use); *Brewer v. Village of Old Field*, 311 F.Supp.2d 390, 396-97, 403-04 (E.D.N.Y. 2004) (where mail and wire fraud further a larger fraudulent scheme, Rule 9 only requires particular delineation of circumstances constituting that scheme); *Alumax Mill Products, Inc. v. Krzysztofiak*, No. 96 C 5012, 1997 WL 201555, *3 (N.D. Ill. 1997) (particularity requirements met by describing role of each defendant in scheme); *Sun Savings and Loan Assoc. v. Dierdorff*, 825 F.2d 187, 195-96 (9th Cir. 1987)(specific intent for mail fraud may be shown by examining the scheme itself).

Plaintiffs' Complaint describes the scheme in detail, contrary to Parrott's assertion that it does not. Defendants pointing their fingers at one another does not change that Plaintiffs have averred in detail the sale of Mare Lease Programs consisting primarily of thoroughbred breeding pairs that either did not exist or whose

11

values were so inflated as to make them wholly fictional. The Programs were nonetheless sold through promotion of both their great profit potential and their alleged tax benefits, and Parrott, among others, played a role in inducing the Plaintiffs to participate in the Programs, then accepted the benefits of the Plaintiffs' participation with knowledge of the underlying fraud.

Parrott's alleged involvement in this scheme is averred in sufficient detail as to give him more than fair notice of the behavior underlying his respective liability. *See Michaels Building Co. v. Ameritrust Co., NA.*, 848 F.2d 674, 679 (6th Cir. 1988) (explaining principal purpose of Rule 9(b) is to ensure that defendant receives fair notice of the alleged misconduct in order to prepare a responsive pleading). Parrott, along with Robinson, was alleged to have been actively involved in the promotion of the Mare Lease Programs, engaging salespeople to promote the programs, reviewing and approving marketing materials containing the baseless projected returns, and obtaining opinion letters from various professionals to vouch for the tax aspects of the Programs. It is enough to plead, as here, that he did so with knowledge of the overselling and other fraudulent aspects of the Programs. Parrott also vouched for the FEEP transaction by allowing himself to be identified as a member of FEEP's advisory committee, thus inducing participants as to the stability of the FEEP alternative. In addition, Plaintiffs aver that Parrott accepted the proceeds of the

12

fraudulent scheme with knowledge of the fraud. This is enough to satisfy the pleading with particularity requirement of Rule 9(b) and state a claim against Parrott. *See Michaels*, 848 F.2d at 679 (principal purpose of Rule 9(b) is to ensure that defendant receives fair notice of the alleged misconduct in order to prepare a responsive pleading).

In considering a motion to dismiss a complaint based on a similarly structured scheme, the United States Court of Appeals for the Eighth Circuit noted "no one fact in isolation demonstrates that there was a scheme to defraud. Rather, when the facts are viewed in their entirety and inferences are made therefrom, a scheme to defraud emerges." *See Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989) (fraudulent aspect of mail fraud measured non-technical standard and complaint stated claim against parties each of whom had varying degrees of proximity to misrepresentations but played part in effectuating the overall scheme). Because each defendant, like Parrott in this case, allegedly could foresee the use of the mail in the culmination of the scheme, the complaint described the fraud with sufficient particularity to withstand a motion to dismiss. *Id.*; *see also Alumax*, 1997 WL 201555 at *3 (complaint "adequately describes the predicate acts with specificity since it adequately describes the role each defendant is alleged to have played in the fraudulent scheme"); *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074 GEL, 2004 WL

2211650, *12 (S.D.N.Y. 2004) (time, place and speaker requirements of Rule 9 become less rigid where complaint describes the nature and the operation of the scheme in which defendants allegedly participated).

The Sixth Circuit has taken a similar approach to RICO claims involving mail or wire fraud. In *Mackenzie v. Murphy*, 178 F.3d 1295, 1999 WL 115485 (6th Cir. 1999), the "vast majority" of the allegations dealt with one particular defendant who actively marketed the fraudulent investments. However, because the other defendants allegedly "caused" the use of the mail by providing advice and by vouching for the credibility of the other defendants, the complaint in *Murphy* stated a RICO claim. Because of their knowledge and acquiescence in and support of the scheme, the complaint describing the overall scheme stated a claim against them, as well. *Id*., at *3.

So long as the Complaint also described a pattern of racketeering activity by an enterprise to which the defendant belonged, as here, that would be enough. *Id*., at *4. Parrott's alleged involvement goes far beyond merely vouching for ClassicStar – rather he actively facilitated the overselling of the Programs and participated in a pattern of mail and wire fraud through his hiring activities in support of the scheme and acquiescence to the use of his name to lend credibility to the alternative investments proposed. He played a part in bringing about the numerous marketing

14

and other mailings identified in the Complaint, or he could at least foresee that such would occur, even if he did not send the wires or place items in the mail himself. *See Advocacy Org.*, 176 F.3d at 322.

Additionally, the communications need not themselves contain false information to serve as the basis for mail or wire fraud. *See Dana Corp. v. Blue Cross & Blue Shield Mutual of Southern Ohio*, 900 F.2d 882, 886 (6th Cir. 1990) ("innocent mailings," which contain no false information, or routine business communications may meet the standard for mail fraud). Courts have consistently recognized that mailings designed to collect the proceeds of a fraudulent scheme or made by the scheme's victims may satisfy this element. *See United States v. Duncan*, 919 F.2d 981, 991-92 (5th Cir. 1990) (mailing of payments by defrauded insurance companies satisfied mailing element); *United States v. Cavale*, 688 F.2d 1098, 1112 (7th Cir. 1982) (mailing of checks by victim); *see also United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970) (citing *Pereira v. United States*, 347 U.S. 1, 8 (1954)) (receipt of money in consummation of scheme to defraud within mail fraud statute). Plaintiffs have alleged both types of communications.

Allegedly, the invoices, schedules, illustrations and summaries sent by ClassicStar reflect the fraudulently inflated values and misstatement regarding the tax aspects of the Programs, and the payments made by Plaintiffs to ClassicStar obviously

15

allowed for the collection of the fraudulently obtained proceeds. The misrepresentations identified in the Complaint, made over the phone or through the mail, directly resulted in the payments to ClassicStar, a circumstance both foreseeable and intended by each participant in the scheme. The description of these activities in the Complaint give Parrott ample notice of his culpable behavior and satisfies the requirement that Plaintiffs plead the underlying fraudulent acts with particularity. *See also Kukuk v. Fredal*, No. 99-CV-74014-DT, 2001 WL 1218557, *5-6 (E.D. Mich. 2001) (allegations which would establish that defendant aided or abetted fraud meet Rule 9 standards in motion to dismiss RICO claim).

As to whether Plaintiffs have alleged that they have suffered harm by reason of the investment or use of the proceeds of racketeering in an enterprise in violation of 18 USC § 1962(a), Courts have broadly construed the terms "investment" or "use," generally as only requiring proof that illegally derived funds flowed into the enterprise," *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000) (citation omitted), and not requiring any proof of direct or immediate use of the racketeering derived income. *United States v. McNary*, 620 F.2d 621, 628 (7th Cir. 1980). Here, Plaintiffs suffered injury from the Moving Defendants' investment of money obtained from prior racketeering activity against previous purchasers of the deliberately overvalued Mare Lease Programs.

Courts have held that an 18 USC § 1962(a) "investment injury" exists if the investment scheme or enterprise was funded with monies from the defendants' racketeering activity against prior victims. *See Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 396 (6th Cir. 1989) ("(I)f the defendants used income derived from racketeering activity in 1980 and 1981 to establish and operate the alleged scam in which the plaintiffs put their money in 1982 and 1983, we do not see why it would be impossible for the plaintiffs to show that they had been injured by a violation of § 1962(a)."); *Williamson*, 224 F.3d at 444 (finding that plaintiffs sufficiently alleged injury from investment of prior racketeering proceeds into the enterprise); *Cook v. Easy Money of Kentucky, Inc.*, 196 F. Supp. 2d 508, 514 (W.D. Ky. 2001) (plaintiffs sufficiently pled §1962(a) injury where the defendants received income from prior unlawful debt collections and used the income to operate and expand the enterprise). The Complaint alleges that from the outset ClassicStar oversold the Mare Lease Programs by drastically inflating the value of the thoroughbred breeding interests, selling Programs with a total cost of tens of millions of dollars greater than the actual thoroughbred interests owned by the defendants could support. The income from these sales supported the Enterprise's operations, allowing for the creation of a legitimate façade that induced Plaintiffs to purchase the overvalued Programs.

Moreover, the Moving Defendants' investment or use of the

17

racketeering proceeds from earlier fraud to pay the next set of investor-victims also made it much more difficult for Plaintiffs to discover the fraudulent scheme. *See Kmart Corporation v. Areeva, Inc.*, Civil Case No. 04-40342, 2006 WL 2828572, *5 (E.D. Mich. Sept. 29, 2006) (finding that plaintiff pled sufficient § 1962(a) injury where it alleged defendant used income generated from initial racketeering enterprise to establish off-shore corporation, making it more difficult for plaintiff to uncover defendant's fraud). By funneling the Enterprise money to GeoStar and to NELC, particularly by way of the circular loan structure and FEEP interest exchanges, the defendants worked to conceal their fraudulent activities by obscuring the actual value of the equine interests and the Mare Lease Programs, thus, making it more difficult for Plaintiffs to initially uncover the scheme and to ultimately recover their money. Effectively, Plaintiffs allege that Defendant Parrott played a role in a scheme which operated a closed loop in the hopes of forestalling Plaintiffs' knowledge of the shortfalls that were inevitable due to the lack of underlying breeding opportunities at the foundation.

**B. Other Claims**

In light of all the above, Defendant Parrott's argument that Plaintiffs' claims brought under the Colorado Organized Crime Control Act, C.R.S. § 18-17-104, must fail for the same reasons that their RICO claims fail is unsupported. Because Plaintiffs'

18

Complaint alleges an enterprise, properly pleads an "investment injury" and is sufficiently particularly plead as to the RICO claims, the COCCA claims are sufficient and Parrott's motion to dismiss will be denied.  Similarly, because the predicate acts of fraud for the purposes of RICO are sufficiently pleaded, Parrott's motion to dismiss claims of fraud and claims of theft by deception and, for that matter, his argument that there is no need for an accounting of his gains from these torts fail.  If Parrott reviewed and approved of marketing materials used by ClassicStar, including the falsely stated projected returns and misleading attorney opinion letters, he could have anticipated that participants would rely on those materials, as well as FEEP documents, for example, in deciding to participate in the Programs.  Plaintiffs aver that they did.  The pleading concerning the scheme in the Complaint, notably the fraudulent representations and Parrott's connection to it all, is enough to show that the claims are plausible on their face and permit the Court to draw the reasonable inference that Parrott is liable for the misconduct alleged. *See* Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 678.

**IV.**

Accordingly, and for all of the reasons stated above, **IT IS ORDERED** that John Parrott's Motion to Dismiss shall be and the same hereby is **DENIED**.

This the 18th day of January, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge