UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

|  |  |
|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION | MDL. No. 1877<br><br>Master File:<br>Civil Action No.<br>5:07-cv-353-JMH |
| and |  |
| SEA SONG FARMS, LLC, *et al.*,<br>     Plaintiffs,<br>V.<br>WILMINGTON TRUST FSB, *et al.*,<br>     Defendants. | Civil Action No.<br>5:09-cv-167-JMH |

**MEMORANDUM OPINION AND ORDER**

**\*\*\* \*\*\* \*\*\***

This matter is before the Court upon the Motions to Dismiss of GeoStar Corporation ("GeoStar"), and Frederick J. Lambert [DE 86; Response at 95, Reply at 116][1]; Spencer Plummer [DE 88; Response at DE 96, Reply at DE 112]; and S. David Plummer [DE 93; Response at DE 100; Reply at DE 114].[2]

---

[1] This motion is stricken, so to speak, with respect to Defendant Tony Ferguson, who is in default.
[2] The moving defendants have also argued that Plaintiffs should have sought leave to file a Second Amended Complaint. Plaintiffs have sought to cure

# I.

Plaintiffs aver a series of losses arising out of initial purchases of participation in a mare leasing program that was represented as sound but, known only to Defendants, never intended to actually provide the participation at the level promised due to a shortage of thoroughbred mares for breeding pairs.

In their Second Amended Complaint, they describe a series of business decisions by and involving the defendants that brought the scheme to life. They aver that, in or around July 2001, Geostar gained ownership and control of ClassicStar and that Geostar owned approximately 15% of Gastar, a publicly-traded oil and gas exploration company. Second Amended Complaint ¶38. Geostar's owners, officers and directors (Defendants Ferguson, Robinson, Parrot, and Lambert) were also officers, directors and control persons of Gastar. Second Amended Complaint ¶ 39. Geostar through its officers and directors, controlled the activities and finances of ClassicStar. *Id.* The officers and directors of Geostar, including Ferguson and Lambert, had complete control over ClassicStar's operating account at Key Bank, and said account was routinely "swept" from 2001 through 2006 to fund the oil and gas operations of Geostar. *Id.*

---

that by filing a Motion for Leave to File Second Amended Complaint [DE 98], to which there is no objection. This motion will be granted.

Ferguson was the Managing Member of ClassicStar and also a principal shareholder of Geostar, owning nearly 20% of its issued and outstanding stock. Second Amended Complaint ¶40. Ferguson was an officer, director, founder and a control person of Geostar and ClassicStar by virtue of his positions as an officer, director, managing member and/or significant shareholder. *Id.*

Lambert was the controller of Geostar (and Gastar). Second Amended Complaint ¶ 47. Lambert was the primary person at Geostar in charge of accounting. As the controller of Geostar (and Gastar), Lambert was intimately involved in the transfer of funds to and from those entities and ClassicStar. *Id.* Lambert was also involved in the "exchanges" of equine interests of Program participants for Gastar stock and other oil and gas interests which perpetuated the alleged scheme to defraud participants in the Mare Lease Program. *Id.* Plaintiffs describe Lambert as a corporate insider of ClassicStar by virtue of his position as an officer of Geostar, which owned and controlled ClassicStar. *Id.* Lambert, along with Ferguson and others, controlled and implemented the financial and accounting procedures employed by ClassicStar and Geostar which perpetuated the allegedly fraudulent scheme. *Id.*

Spencer Plummer served as Vice President of Classicstar and replaced his father, S. David Plummer, as President on or about April 9, 2003. Second Amended Complaint ¶ 36. He was an officer of ClassicStar until he was terminated on or about February 1, 2006.

*Id.* Spencer Plummer was actively involved with all facets of ClassicStar and the ClassicStar Programs. He participated in meetings in the spring of 2004 with other Defendants where it was decided to exchange thoroughbred horses for performance horses or for oil and gas interests to further the scheme by covering up the shortage of thoroughbreds available to the Programs. *Id.* Spencer Plummer and his father, S. David Plummer, received millions of dollars from ClassicStar, Geostar and/or their affiliates. *Id.*

Plaintiffs allege that Defendants Geostar, Ferguson, Lambert and others deliberately created, marketed, promoted and sold ClassicStar Programs (hereinafter "Programs"), a means of leasing a thoroughbred mare for a breeding opportunity, with a total value many times greater than the thoroughbred interests owned by ClassicStar and/or its affiliates. Second Amended Complaint ¶¶ 12, 13, 14. As part of a scheme to market the Programs to as many wealthy individuals as possible, Geostar, Ferguson and Lambert, along with the Plummers, Thomas E. Robinson, John W. Parrott and ClassicStar, LLC, set out to find, and successfully engaged, a nationwide team of promoters, including Wilmington Trust and a number of attorneys, touting the tax benefits and the potential returns on an investment in the Programs.

Once participants invested in the Programs, Defendants Geostar, Ferguson and Lambert, with the assistance of others, including Robinson, Parrot, and Wilmington Trust, perpetuated the

fraudulent scheme by enticing Program participants, like Plaintiffs, to exchange, their equine interests for other investments including oil and gas working interests and Gastar stock. Second Amended Complaint ¶ 26. In reality, the assets promised in exchange for the equine interests either did not in fact exist, were worthless, or were never delivered. *Id.* Geostar utilized the Classicstar Programs as a source of cash, using the Programs to raise money for the oil and gas operations of Gastar (which as noted above was controlled by Geostar and its primary shareholders). Second Amended Complaint ¶ 41.

Geostar, through Ferguson, Lambert and other officers and directors, managed and controlled all aspects of ClassicStar, including but not limited to its marketing, its scheme to switch out thoroughbred interests with standardbred or oil and gas interests, the fraudulent transfer of cash from victims, like Plaintiffs, through ClassicStar into the pockets of all the defendants, and the multiyear scheme to hide the underlying lack of breeding participation opportunities. *Id.* Plaintiffs aver that, in addition to re-leasing the mares and re-charging the attendant costs, Geostar, Ferguson, Lambert, Spencer Plummer, and S. David Plummer, among others, knew that the Programs were inadequate to meet the participation promised because they were aware that 60% of all funds invested in the Programs (after paying 7% commissions to promoters like Wilmington Trust and others) were being siphoned

5

off the Programs and utilized to invest in oil and gas drilling operations for the benefit of Geostar,. Second Amended Complaint ¶ 92. Pursuant to a contract entitled "Amendment to Membership Purchase Agreement" between ClassicStar Farms, Inc., and S. David Plummer, Spencer Plummer and Debora Plummer (S. David Plummer's wife), effective October 31, 2001, the Plummers contracted to sell their interests in Tartan Business, L.C. The contract provides that once the Plummers received the final $1 Million of the $6 Million consideration, then 60% of the funds raised in selling the Programs would be invested in oil and gas exploration. *Id.* As an example, Spencer's Agreement provide that "Once the full cash portion of the Purchase Price has been paid to Seller, ClassicStar shall retain forty percent (40%) of all funds and proceeds received from Mare Lessees for working capital. The remaining sixty percent (60%) of such funds and proceeds received from Mare Lessees by ClassicStar shall be sent to Buyer in exchange for a commensurate amount of interests in the Drilling Program converted to ClassicStar. *Id.* (emphasis in original omitted).

Plaintiffs allege $17 million in out-of-pocket losses having invested $7 Million in thoroughbred horses in 2003 and another $5.3 Million in 2004, with the IRS seeking millions more from them Second Amended Complaint ¶ 112. In reality, according to Plaintiffs, the assets promised in exchange for the equine interests purchased either did not in fact exist, were worthless,

6

or were never delivered. *Id.* The moving defendants now seek to dismiss portions of Plaintiffs' claims as set forth below.

## II.

In evaluating a Rule 12(b)(6) motion, the factual allegations of the Complaint "must be enough" that the right to relief is "above the speculative level" and is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint pleads facts "merely consistent with" liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.

**A. CIVIL RICO & MAIL/WIRE FRAUD**

GeoStar, Lambert, S. David Plummer, and Spencer Plummer argue that, while mail and wire fraud may form the requisite "predicate acts" required to demonstrate "racketeering activity" under 18 U.S.C. § 1961(1), Plaintiffs have failed to meet the requirements of pleading mail and wire fraud against them with the requisite detail to successfully state a cause of action under 18 U.S.C. § 1962. The court disagrees.

While the Sixth Circuit requires Plaintiffs to identify with specificity the actions that each defendant has taken in furtherance of the alleged fraud, *see, e.g., Central Distr. Of Beer, Inc. v. Conn*, 5 F.3d 181 (6th Cir. 1983) and *In re Reciprocal of America (ROA) Sales Practice Litigation*, Master No. MDL 1551 Civ. No. 04-2078, 2007 WL 2900285, *8 (W.D. Tenn. Sept. 28, 2007), the law makes no requirement that *each* defendant involved must have personally made a misrepresentation to a plaintiff or used the mails or wires. To satisfy the particularity requirement, a plaintiff need only allege that each RICO defendant participated in a scheme to defraud knowing or having reason to anticipate the use of the mail or wires would occur and that each such use would further the fraudulent scheme. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 322 (6th Cir. 1999). "It is not necessary to allege that the defendants have personally used the mail or wires; it is sufficient that a defendant 'causes' the use of the mails and wires." *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 76 (E.D.N.Y. 2006); *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789, 802-803 (W.D. Tenn. 2005) (*citing United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001); United States v. Brown, 146 F.3d 477, 488 (6th Cir. 1998); United States v. Oldfield, 859 F.2d 3992, 400 (6th Cir. 2008)) (personal use of the mail or electronic

communication is not required to state a claim for mail or wire fraud).

The mailing and wire communications alleged need not be fraudulent in and of themselves; innocuous or "innocent" mailing and wirings are sufficient RICO predicates as long as they further a fraudulent scheme. *Schmuck v. United States*, 486 U.S. 705, 714-15 (1989) ("innocent" mailing sufficient for purposes of mail fraud statute); *Dana Corp. v. Blue Cross & Blue Shield Mutual of Southern Ohio,* 900 F.2d 882, 886 (6th Cir. 1990) (innocent mailings, which contain no false information, or routine business communications may meet the standard for mail fraud); see also *Tabas v. Tabas*, 47 F.3d 1280, 1294 n. 18 (3d Cir. 1995); *U.S. v. Pearlstein*, 576 F.2d 531, *535* (3d Cir. 1978). "The actual violation is the mailing, although the mailing must relate to the underlying fraudulent scheme. Moreover, each mailing that is 'incident to an essential part of the scheme' constitutes a new violation." *Kehr Packages, Inc v. Fidelcor. Inc.*, 926 F.2d 1406, 1413-14 (3d Cir. 1991).

Plaintiffs aver at least twenty-eight wire transfers, telephone calls, or emails in furtherance of the scheme, soliciting the participation of Plaintiffs in the ClassicStar Programs and persuading participants to convert the Mare Leases to alternative business opportunities in order to obscure the fact that the Programs were unsustainable because there were too few horses to provide the breeding opportunities promised to all of the

9

participants. Second Amend. Compl. ¶ 140. They aver many more activities on the part of these Defendants that made the scheme go – the day-to-day actions and decisions that set the fraud alleged in action.

The Court concludes, as well, that the Second Amended Complaint details the Defendants' substantial roles in this scheme in sufficient detail as to give them more than fair notice of the behavior giving rise to their alleged liability. See *Michaels Building Co. v. Ameritrust Co., NA,* 848 F.2d 674, 679 (6th Cir. 1988) (the principal purpose of Rule 9(b) is to ensure that defendant receives fair notice of the alleged misconduct in order to prepare a responsive pleading). The Second Amended Complaint is replete with specifics regarding the fraudulent acts and omissions of Geostar, Ferguson and Lambert, as well as S. David Plummer and Spencer Plummer. Second Amended Complaint ¶¶ 140. Similarly, the Second Amended Complaint sufficiently identifies by time, recipient and content the frauds committed by those Defendants, Second Amended Complaint ¶¶ 140, as well as a litany of actions and harms that led up to or resulted from those transfers, calls, and emails. While it is clear that the Sixth Circuit requires Plaintiffs to identify with specificity the actions that each defendant has taken in furtherance of the alleged fraud, the law makes no requirement that each defendant involved must have personally made a misrepresentation. *See* Memorandum Opinion &

Order, August 15, 2011, Pg. 22, *In re Classicstar Litigation*, MDL No. 1877 ("Memorandum Opinion and Order") (citing *Central Distr. Of Beer, Inc. v. Conn*, 5 F.3d 181 (6th Cir. 1983) and *In re Reciprocal of America (ROA) Sales Practice Litigation*, Master No. MDL 1551 Civ. No. 04-2078, 2007 WL 2900285, *8 (W.D.Tenn. Sept. 28, 2007)).

Neither 18 U.S.C. §§ 1341 nor 1343, the mail and wire fraud statutes, require that the defendant personally make the relevant communication, only that his actions cause another to use the mail or wires. *Memorandum Opinion & Order*, *supra* at Pgs. 23 – 24. To satisfy the particularity requirement, a plaintiff need only allege that each RICO defendant participated in a scheme to defraud knowing or having reason to anticipate the use of the mail or wires would occur and that each such use would further the fraudulent scheme. *Id.* citing *Advocacy Org. for Patients and Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 322 (6th Cir. 1999). "It is not necessary to allege that the defendants have personally used the mail or wires; it is sufficient that a defendant "causes' the use of the mails and wires." *SKS Constructors, Inc. v. Drinkwine*, 458 F.Supp.2d 68, 76 (E.D.N.Y. 2006); *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789, 802-803 (W.D.Tenn. 2005) (citing *United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001); *United States v. Brown*, 146 F.3d 477, 488 (6th Cir. 1998); *United States v. Oldfield*, 859 F.2d 3992, 400 (6th Cir. 2008)) (personal use of

the mail or electronic communication is not required to state a claim for mail or wire fraud). Plaintiffs' RICO Counts have been adequately pled and will not be dismissed at this time.

**B. FRAUD**

Defendants GeoStar, Lambert, S. David Plummer, and Spencer Plummer also argue that Plaintiff's claim for common law fraud in Count IV should be dismissed for failure to state fraud with particularity under Fed. R. Civ. P. 9(b)

In the Commonwealth of Kentucky, "[a] party claiming harm from fraud must establish six elements of fraud by clear and convincing evidence as follows: a) material misrepresentation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (fraud through direct misrepresentation); *Smith v. General Motors Corp.*, 979 S.W.2d 128, 130 (Ky. Ct. App. 1998) (failure to disclose may be actionable where one party to a contract has superior information and is relied upon to disclose same when it fails to do so or where reliance is based on partial disclosure); *Raymond-Elderedge Co., Inc. v. Security Realty Inv. Co.*, 91 F.2d 168, 173 (6th Cir. 1937) (one who clothes another with the power to commit fraud and then remains silent may be liable); *Kirby v. Firth*, 311 S.W.2d 799, 802 (1958) (one who accepts proceeds of agents' fraud with knowledge

12

ratifies that fraud and becomes liable because, "[t]hough innocent himself at the time of the misrepresentation, one may accept the fruits of a business deal and at the same time disclaim responsibility for the measures by which they were acquired."). In Kentucky, common law conspiracy is simply an agreement to do by concerted action an unlawful act, or to do a lawful act by unlawful means. *McDonald v. Goodman*, 239 S.W.2d 97 (Ky. 1951).

As set forth above, Plaintiffs' Second Amended Complaint painstakingly details acts, omissions, and mistatements on the part of each of these defendants, all in support of an effort to obtain Plaintiffs' funds through the ClassicStar Program Mare Leases and to keep them using what starts to seem like every means necessary as one reads the laundry list of exchanges and reinvestments. The defendant's alleged agreement to an unlawful act (fraud), i.e., conspiracy, is adequately pleaded.

This Court has already held in a related matter that,

> [t]his liability is clear to the Court, whether each Defendant had a direct obligation to speak the truth, conspired with or authorized or aided and abetted those that did not speak the truth, or because some among them acted as agents of those who did not speak the truth.
>
> * * *
>
> This also includes entities that were privy to and participated in the fraud, including . . . all of whom played a role in making the misrepresentation happen and some of whom may have benefited from the misrepresentation in

>             the form of proceeds from investments in the
>             falsely portrayed Mare Lease Programs, Geostar
>             being the most notable example in the
>             Complaint.

*Memorandum Opinion & Order*, 5:07-cv-353 (Aug. 15, 2011), at pp. 30-31. This matter is no different, and the other defendants are afforded no security in knowing that others may be to blame, as well.

### C. UNJUST ENRICHMENT

As for Spencer Plummer's arguments against Plaintiffs' claims for unjust enrichment, they fail, too. In Kentucky, for an unjust enrichment claim to be viable, Plaintiffs must plead the following elements: (1) a benefit conferred upon the defendant [Spencer] at the plaintiff's expense, (2) a resulting appreciation of the benefit by the defendant, and (3) an inequitable retention of the benefit without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73 (Ky. Ct. App. 2009), citing *Guarantee Electric v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1381 (W.D.Ky. 1987).

This equitable doctrine serves as a basis for restitution to prevent one person from keeping money or benefits belonging to another. See *Union Central Life Ins. Co. v. Glasscock*, 110 S.W.2d 681 (Ky. 1937) *Haeberle v. St. Paul Fire and Marine Ins. Co.*, 769 S.W.2d 64 (Ky. Ct. App. 1989). Under the doctrine of unjust enrichment, it is not necessary that the party unjustly enriched should have been guilty of any tortious or fraudulent act in order

to create an obligation to make restitution or to compensate the party wronged. Rather, the question is whether he, to the detriment of another, obtained something of value to which he was not entitled. *Id.*

Plaintiffs invested several millions of dollars with Spencer Plummer and ClassicStar, nearly all of which has been lost. Spencer enjoyed the benefits of the fraudulent scheme with full knowledge of the scheme on the facts averred. Second Amended Complaint ¶¶ 14, 36, 92, 93, 258 - 261. Plaintiffs' claim that Spencer Plummer has been unjustly enriched at Plaintiffs' is sufficiently pleaded on these facts under Kentucky law.

Accordingly, for all of the reasons stated above, **IT IS ORDERED**:

(1) That Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 98], to which there is no objection, is **GRANTED**;

(2) That Defendants GeoStar Corporation and Frederick J. Lambert's Motion for Partial Dismissal of Second Amended Complaint [DE 86] is **DENIED**

(3) That Defendant Spencer Plummer's Motion to Dismiss Second Amended Complaint [DE 88] is **DENIED;**

(4) That Defendant S. David Plummer's Motion to Dismiss Second Amended Complaint [DE 93] is **DENIED**; and

(5) That Defendant John W. Parrott's Motion to Dismiss Second Amended Complaint [DE 94] is **DENIED.**

Additionally, as a housekeeping matter, **IT IS ORDERED**:

(6) That the following Motions found at [DE 27, 50, 54, 90, 108, 126, 127, and 135] are **DENIED AS MOOT**; and

(7) That, upon the Court's own motion, the Court's Order of August 27, 2009 [DE 45] is **AMENDED** to reflect that the Motion for Order permitting counsel to appear telephonically may be found at DE 44, not DE 144, and that the Motion was disposed of by virtue of the Order found at DE 45, as amended here.

Finally, **IT IS ORDERED**

(8) that the remaining parties shall **FILE A STATUS REPORT** within **fifteen (15) days** of entry of this order advising on (a) whether there is any need for further proceedings, (b) a timeline for any remaining matters, including whether there needs to be a scheduling order entered for any additional discovery or further briefing, and (c) whether this matter might be reasonably scheduled for May 2019, if necessary.

This the 19th day of January, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge